# United States District Court
## for the Northern District of Oklahoma

---

Case No. 25-cv-059-JDR-CDL

---

JOHN ZINK COMPANY, LLC,

*Plaintiff,*

*versus*

ZEECO, INC.; CHRIS BLUE; RICKY SAHJAL; JAXON SANDERS,

*Defendants.*

---

## OPINION AND ORDER

---

Plaintiff John Zink Company, LLC, sued its competitor, Zeeco, Inc., and its former employees Chris Blue, Ricky Sahjal, and Jaxon Sanders for misappropriating John Zink's trade secrets and, in the case of the individual defendants, breaching the contractual and fiduciary obligations they owed to John Zink. Dkt. 2. During discovery, John Zink asked the Court to enter its standard protective order with modifications preventing the disclosure of highly confidential information to anyone other than outside counsel, outside experts, and certain in-house counsel. Dkt. 35. Zeeco agreed that a protective order should be adopted but argued that John Zink's proposed modifications would impair Zeeco's ability to defend itself. Dkt. 40. Magistrate Judge Christine Little agreed with Zeeco. She entered the Court's standard protective order with the parties' agreed-upon changes but without the additional modifications requested by John Zink. Dkt. 52. John Zink now argues that Judge Little clearly erred by refusing to adopt the changes it requested. Dkt. 56. The Court disagrees and overrules John Zink's objections.

No. 25-cv-059

I

Plaintiff John Zink Company, LLC manufactures and installs combustion engineering equipment and provides related services to customers around the world. Dkt. 2 at 2-3. John Zink attributes its success in the industry to its creation and protection of confidential, proprietary, and trade secret information, including its "Process Burner IP," which John Zink defines to include "technical information, engineering information, know-how, methods, processes, techniques, procedures, equipment, and tools utilized in the manufacturing process for its process burners." *Id.* at 4.

Defendants Chris Blue, Ricky Sahjal, and Jaxon Sanders are former John Zink employees, all of whom worked with or had access to most, if not all, of the Process Burner IP. *Id.* at 6-13. Zeeco, one of John Zink's primary competitors, hired Mr. Blue, Mr. Sahjal, and Mr. Sanders away from John Zink. *Id.* John Zink alleges that at least Mr. Blue and Mr. Sahjal have disclosed Process Burner IP to Zeeco, utilized Process Burner IP to improve Zeeco's manufacturing process, and contacted John Zink employees to obtain information about Process Burner IP for use in Zeeco's own manufacturing processes. *Id.* at 13-14.

John Zink seeks damages from Defendants for the alleged misappropriation of its Process Burner IP as well as an order enjoining them from any further misappropriation of John Zink's confidential information and trade secrets. *Id.* at 24-25. To facilitate the trial of these claims, John Zink asked the Court to adopt its standard protective order, Form CV-29a, with some changes: John Zink proposed that section 5 of the order, which addresses highly confidential information, should be modified so that four (rather than two) of a receiving party's in-house counsel could access highly confidential information, and restricting the in-house counsel who could receive that information to only those attorneys who "have no involvement in competitive decision-making." Dkt. 56 at 8. *See* Dkt. 35-5 (permitting disclosure to in-house counsel "provided such in-house counsel have no involvement in

2

No. 25-cv-059

providing input on what equipment to use on the party's assembly line(s), which equipment to make, acquire, or purchase for use on the party's assembly line(s), the design of any assembly line(s), or which prospective customers to pursue or the strategy for pursing any prospective customers"). John Zink also asked the Court to strike a provision that would have permitted two directors, officers, employees or other representatives to review information designated "highly confidential." Dkt. 56 at 8; Dkt. 35-5 at 12. The changes proposed by John Zink effectively added an "attorneys' eyes only" provision to the Court's standard protective order with the caveat that certain in-house counsel—namely, those who were involved in the competitive aspects of the receiving party's business—would be precluded from reviewing information designated "highly confidential." Zeeco objected to these limitations.[1]

Magistrate Judge Little declined to adopt the contested modifications. Instead, she adopted the Court's standard protective order with only the "proposed modifications on which the parties agree[d]." Dkt. 52 at 8. In reaching this decision, Judge Little concluded that John Zink had not established that its Process Burner IP consisted wholly or partly of trade secrets. *Id.* at 6. She also recognized that the modifications proposed by John Zink would complicate discovery and impair the defense of this case. *Id.* at 6. Judge Little considered the fact that, without those modifications, the standard protective order permitted disclosure only to a limited subset of individuals subject to use restrictions. She then balanced the speculative harm that might result from the limited disclosure of John Zink's confidential information against Zeeco's need to prepare a defense. *Id.* at 5-8. Judge Little concluded that the modifications proposed by John Zink were unduly restrictive under the circumstances presented here and entered a protective order without the

---

[1] Some of the changes proposed by John Zink were not the subject of any objections. The agreed-upon changes were incorporated into the protective order and are not at issue here.

No. 25-cv-059

requested changes. *Id.* John Zink now objects to the protective order entered in this case.

## II

Magistrate judges are vested with authority to hear and decide most, but not all, pretrial matters pending before a district court. *See* 28 U.S.C. § 636(b); *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461 (10th Cir. 1988) (indicating that magistrate judges may "hear and determine any pretrial matters . . . save for eight excepted motions"). When a magistrate judge issues an order on a nondispositive pretrial matter, it will not be set aside or modified unless "the order is found to be clearly erroneous or contrary to law." *United States v. Aguirre-Diaz*, No. 18-cr-0171-004-CVE, 2019 WL 669566 (N.D. Okla. Feb. 15, 2019) (denying objections to protective order). *See* 28 U.S.C. § 636(b)(1)(A). A reviewing court will affirm a magistrate judge's order "unless it 'on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Allen v. Sybase, Inc.*, 468 F.3d 642, 658 (10th Cir. 2006) (quoting *Ocelot*, 847 F.2d at 1464).

John Zink argues that Judge Little made a mistake when she declined to adopt its proposed attorneys'-eyes-only restrictions. In support of this argument, John Zink first claims that Judge Little applied the wrong legal standard. Dkt. 56 at 14, n.3. Next, it argues that attorneys'-eyes-only provisions are routine and necessary in cases that involve trade-secret disputes between competitors. *Id.* at 12-14 (collecting cases). Finally, it warns that the Court's failure to adopt the proposed restriction will allow its proprietary information "to flow freely into the hands of a direct competitor" and "defeat the purpose of this litigation altogether." *Id.* at 14, 18. It maintains that its proposed changes "strike the proper balance between allowing Zeeco's lawyers and experts to litigate on the basis of John Zink's sensitive information, and preventing Zeeco's business personnel from viewing the sensitive information." *Id.* at 20 (citation, quotation marks, and brackets omitted). The Court will address each argument in turn.

No. 25-cv-059

## A

"Generally, the analysis for determining whether to issue a protective order or to retain an attorney's-eyes-only designation is the same." *Integrity Sol'ns, Ltd. v. MCS Consulting, Inc.*, No. 24-cv-02519-SKC-NRN, 2025 WL 1207597, at *1 (D. Colo. April 25, 2025) (citation omitted). First, the party seeking to prevent or restrict production must show there is "good cause" for the restriction, as required by Rule 26 of the Federal Rules of Civil Procedure. *Id. See* Fed. R. Civ. P. 26(c)(1)(G) (providing that, "for good cause," a court may prevent the disclosure of trade secrets or confidential information or require that disclosure be made only in a specified way). To make this showing, the party seeking protection must do more than simply allege that trade secrets are at issue; it must set forth specific facts showing that the information at issue is a trade secret or confidential and then demonstrate that the disclosure of that information might be harmful. *See Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981) (recognizing that a person resisting discovery must "first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful" (footnote omitted)); *S2 Automation LLC v. Micron Tech., Inc.*, 283 F.R.D. 671, 682 (D.N.M. 2012) (granting protective order where the requesting party "provided *evidence* supporting the conclusion that it has sensitive commercial information" (emphasis added)). Once this showing has been made, "the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action." *Centurion Indus.*, 665 F.2d at 325.

John Zink argues that this is no longer the case in the Tenth Circuit. *See* Dkt. 56 at 14, n.3 (arguing that it was "error . . . to place on John Zink the burden to establish that the information sought . . . is a trade secret and then demonstrate that its disclosure might be harmful" (citation and quotation marks omitted)). According to John Zink, the standard set forth in *Centurion Industries* does not apply when determining the need for a protective order.

5

No. 25-cv-059

*Id.* The Court disagrees. John Zink has not pointed to any Tenth Circuit opinion abrogating *Centurion Industries*. The plain language of Rule 26(c) provides that protective orders may only issue for "good cause." Fed. R. Civ. P. 26(c). The Tenth Circuit has expressly stated that, "[w]hen a party seeks . . . a protective order, it 'must first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful.'" *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1190 (10th Cir. 2009) (quoting *Centurion Indus.*, 665 F.3d at 325)). And courts within the Tenth Circuit, including this one, have consistently required that, in trade-secret cases, a showing of good cause "requires a particular and specific demonstration of fact as distinguished from conclusory or stereotyped statements." *EQ Oklahoma, Inc. v. A Clean Env't Co.*, No. 11-cv-510-GKF-PJC, 2012 WL 5429869, at *1 (N.D. Okla. Nov. 7, 2012).[2]

John Zink points to *EMC Corporation v. Orange Point LLC*, a 2012 district-court opinion, to support its claim that Judge Little applied the wrong legal standard. But that case does not demonstrate any error, clear or otherwise, by Judge Little. In *EMC Corporation*, (which is not a case involving a blanket protective order), the court addressed two motions to compel, both of which turned on whether the plaintiff had adequately identified its trade secrets. *EMC Corp. v. OrangePoint, LLC*, No. 11-2643-JAR, 2012 WL 13019524, at *1 (D. Kan. July 31, 2012). The court concluded that the plaintiff sufficiently identified its trade secrets by listing and categorizing 111 "actual documents that it claim[ed] as trade secrets." *Id.* at *4. Although the court recognized that the plaintiff was not required to establish each element of a

---

[2] *See Integrity Sol'ns*, 2025 WL 1207597, at *2 (requiring the plaintiff to "do more than simply allege that the confidential materials are trade secrets"); *Hoog v. Dometic Corp.*, No. CIV-20-00272-JD, 2023 WL 6380001, at *4 (W.D. Okla. Sept. 29, 2023) (recognizing that Tenth Circuit law requires a party seeking protection under Rule 26(c)(1) to establish that the information is a trade secret and then show that disclosure of the information would be harmful); *Univ. of Kansas Ctr. for Research, Inc. v. United States*, No. 08-2565-JAR-DJW, 2010 WL 571824, at *4 (D. Kan. Feb. 12, 2010) (requiring the party seeking a protective order to demonstrate facts establishing good cause for the order).

6

No. 25-cv-059

trade secret during discovery, *id.* at \*3, it did not hold (as John Zink suggests)
that a plaintiff need not present *any* evidence that it owns a trade secret before
obtaining a protective order. The term "protective order" does not even ap-
pear in the court's opinion. *See id.* at \*1-\*6. And the same judge that issued
the opinion in *EMC Corporation* later recognized that a party requesting a
blanket protective order must demonstrate good cause for doing so. *Mann v.
Con-Way Freight*, No. 16-2196-CM, 2016 WL 6164013, at \*1 (D. Kan. Oct. 24,
2016) (O'Hara, J.). The district court's opinion in *EMC Corporation* does not
run counter to the established case law setting forth the two-step procedure
in *Centurion Industries* and its progeny. *See McKellips v. Kumho Tire Co.*, 305
F.R.D. 655, 663 (D. Kan. 2015) (applying the procedure set forth in *Centurion
Industries* and *In re Cooper Tire & Rubber*). It was not error for Judge Little to
follow that established procedure.

## B

John Zink next argues Judge Little erred when she denied its request
for an attorneys'-eyes-only limitation because these limitations are "routine"
in trade-secret cases. *See* Dkt. 56 at 5. Although John Zink is correct that these
provisions have been described as routine, *see Paycom Payroll, LLC v. Richison*,
758 F.3d 1198, 1202 (10th Cir. 2014) (quoting *In re City of New York*, 607 F.3d
923, 935 (2d Cir. 2010)),[3] it does not follow that it is error to reject a request

---

[3] There is danger in allowing the law to develop through unexamined sound bites.
Too often, language that is used for a limited purpose in one opinion is copied, pasted, and
used in a way that is divorced from (or even inconsistent with) the context of the underlying
opinion. This appears to be the case with *In re City of New York*, 607 F.3d 923 (2d Cir. 2010).
In that case, the court recognized in dicta that attorneys'-eyes-only provisions are "routine
feature[s] of civil litigation involving trade secrets." *Id.* at 935. But the court was not ad-
dressing a trade-secret case. Instead, it was considering whether an attorneys'-eyes-only re-
striction would provide adequate protection to a city that had been compelled to produce
1800 pages of confidential reports by undercover officers investigating security threats. *Id.*
at 928. Then, in *Paycom*, the Tenth Circuit addressed whether a court *may* impose an attor-
neys'-eyes-only provision with a party's consent. *Paycom*, 758 F.3d at 1202-03 (rejecting ar-
gument that attorney's-eyes-only provision, which the challenging party had initially agreed
*(footnote continues)*

No. 25-cv-059

for an attorneys'-eyes-only provision. "[A] court *may* impose such a re-
striction," even over the objection of a party, *see Paycom*, 748 F.3d at 1203
(emphasis added), but it is not required to do so simply because a case in-
volves a trade-secret dispute between competitors.

Courts have broad discretion to decide whether a protective order is
warranted and, if so, what degree of protection is warranted. *See Seattle Times
Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). Because the exercise of this discre-
tion rests with the court's consideration of case-specific details, "hard and
fast rules in this area are inappropriate." *Mann v. Con-Way Freight*, No. 16-
2196-CM, 2016 WL 6164013, at *1 (D. Kan. Oct. 24, 2016) (citation, quota-
tion marks, and footnote omitted). There is no "standard practice" of requir-
ing attorneys'-eyes-only restrictions for trade-secret cases in this district, as
John Zink suggests. Dkt. 56 at 13, 15. The standard practice is, instead, to
balance the need for the information against the harm that would result from
the disclosure and, if appropriate, to establish the safeguards that are war-
ranted under the circumstances. *E.g., Video Gaming Techs., Inc. v. Castle Hill
Studios LLC*, No. 17-cv-454-GKF-JFJ, 2019 WL 2514705, at *3 (N.D. Okla.
June 18, 2019). Judge Little did not err in following that practice.

## C

Finally, John Zink argues that Judge Little erred in balancing the risks
of disclosure against the need for disclosure. It claims that an attorneys'-eyes-
only limitation is necessary to "strike the proper balance between allowing
Zeeco's lawyers and experts to litigate on the basis of John Zink's sensitive
information, and preventing Zeeco's business personnel from viewing the

---

to, violated his due-process rights). In doing so, the Tenth Circuit cited *City of New York* for
the commonsense proposition that attorneys'-eyes-only provisions are not only permissible,
but common in trade-secret cases. *Id.* Now, John Zink is using the language of *City of New
York* and *Paycom* to suggest that attorneys'-eyes-only provisions are the default rule in trade-
secret cases and that it is error to refuse one, even though neither opinion supports such a
far-reaching statement. Dkt. 56 at 13-14. Arguments like this are unhelpful to the Court and,
when left unchecked, they can negatively impact the development of the rule of law.

No. 25-cv-059

sensitive information." Dkt. 56 at 20 (citations, quotation marks, and brackets omitted). Once again, the Court disagrees.

The Court begins its analysis where Judge Little did: By examining whether John Zink met its burden of showing that "the information sought is a trade secret" and that "its disclosure might be harmful." Dkt. 52 at 4 (quoting *Centurion Indus. v. Warren Steurer & Assoc.*, 665 F.2d 323, 325 (10th Cir. 1981)). *See also Ring Energy, Inc. v. Hullum*, No. 15-cv-00109-JHP-TLW, 2015 WL 4413366, at *6 (N.D. Okla. July 17, 2015). Judge Little reviewed the record and concluded it was "unclear whether John Zink's Process Burner IP . . . wholly or partially consists of trade secrets." Dkt. 52 at 5. The Court has reviewed the record and reaches the same conclusion. John Zink's original motion for a protective order consisted primarily of conclusory allegations that this case involves trade secrets. *See generally* Dkt. 35. It introduced no affidavits, no facts, and no details regarding the trade secrets at issue. *Id.* John Zink's conclusory statements that its "Process Burner IP" consists of "valuable, confidential, proprietary, and trade secret information" is insufficient to satisfy John Zink's initial burden. *Id.* at 3. *See EQ Oklahoma, Inc. v. A Clean Environment Co.*, No. 11-cv-510-GKF-PJC, 2012 WL 5429869, at *2 (N.D. Okla. Nov. 7, 2012) (rejecting request for attorneys'-eyes-only provision where the requesting party had done nothing more than set forth "conclusory and stereotyped statements," which did not satisfy the party's burden under Rule 26). Judge Little did not clearly err in concluding that John Zink failed to satisfy its initial burden under Rule 26.[4]

---

[4] John Zink introduced new evidence in support of its objections to Judge Little's order. *See* Dkt. 56 at 7; Dkt. 56-1. Assuming for the sake of argument that the Court may review this new evidence when reviewing for clear error, the Court finds that the new evidence does change the outcome. The affidavit simply alleges that Defendants are in possession of recipes, settings, and fixtures that are "confidential and proprietary." Dkt. 56-1 at 2. These conclusory statements do not tend to establish that the information sought in discovery constitutes trade secrets.

No. 25-cv-059

The case law cited by John Zink is not to the contrary. Several of the cases John Zink relies upon involve parties who, unlike John Zink, made the necessary preliminary showing under Rule 26. *See Littlebear v. Advanced Bionics, LLC*, No. 11-cv-418-GKF-PJC, 2012 WL 2979023, at *2 (N.D. Okla. July 20, 2012) (concluding that the defendant had met its burden of demonstrating that the information was a trade secret or other confidential information through the affidavit of its vice president).[5] Others involve parties who agreed that heightened protection was appropriate, but disagreed on the details. *See Taiyo Int'l, Inc. v. Phyto Tech Corp.*, 275 F.R.D. 497, 501 (D. Minn. 2011) ("At the outset of this case, the Court entered a Protective Order, upon stipulation of the parties, that included the opportunity for a party to designate its most important trade-secret information as 'Confidential Attorneys' Eyes Only.'").[6] It does not appear that any of the cases cited by John Zink

---

[5] *See also Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 247 (D. Kan. 2010) (finding that the defendant "ha[d] shown good cause for a two-tier protective order"); *Mitchell Int'l, Inc. v. Healthlift Pharmacy Servs., LLC*, No. 219cv000637RJSDAO, 2021 WL 1599247, at *3 (D. Utah Apr. 23, 2021) (addressing attorneys'-eyes-only designation of documents described in a spreadsheet setting forth the contents of the documents at issue); *ViaSat, Inc. v. Acacia Commc'ns, Inc.*, No. 16cv463 BEN (JMA), 2017 WL 840876, at *2 (S.D. Cal. Mar. 2, 2017) (denying request to disclose technical specifications where the disclosing party submitted a declaration concerning the contents of the specifications, and where the requesting party provided "no evidence to refute [those] assertions").

[6] *See also Paycom Payroll, LLC v. Richison*, 758 F.3d 1198, 1200 (10th Cir. 2014) (analyzing a consent decree under which the parties agreed to review of software by a special master); *1221122 Ontario Ltd. v. TCP Water Sols., Inc.*, No. 10 C 4942, 2011 WL 2516531, at *4 (N.D. Ill. June 23, 2011) (addressing a dispute where the defendants had plausibly maintained, and the requesting party conceded, that some of the requested information would consist of trade secrets); *Covelo Clothing, Inc. v. Atlandia Imports, Inc.*, No. CIV.A. 07-cv-02403-MSK-MEH, 2007 WL 4287731, at *2 (D. Colo. Dec. 5, 2007) (noting that the objecting party "d[id] not dispute that some of the documents requested could contain trade secrets" but believed the protective order, which contained an attorneys'-eyes-only provision, to be sufficient); *Double Eagle Alloys, Inc. v. Hooper*, Case No. 19-cv-243-TCK-FHM, Dkt. 24 (unopposed motion for protective order filed Aug. 7, 2019) (setting forth agreed attorneys'-eyes-only provision, together with affidavit describing how the information sought related to current activities and "current third parties for whom [the plaintiff and defendant] are directly competing for business").

No. 25-cv-059

involve a dispute over whether the party seeking protection had satisfied its threshold burden. *See* Dkt. 40 at 4 (arguing that John Zink "failed to meet its threshold burden").[7] These cases do little (if anything) to support John Zink's claim that Judge Little clearly erred by refusing an attorneys'-eyes-only limitation in a case where the producing party failed to establish that the information sought was a trade secret. As a result, the Court does not conclude, as John Zink does, that these cases demonstrate legal error by Judge Little. The cited cases are inapposite.[8]

Despite concluding that John Zink had failed to meet its preliminary burden, Judge Little accepted the parties' apparent agreement that the information was "at least confidential," considered the risks of disclosure and the burden that would be faced by Zeeco if its attorneys were prevented from reviewing technical information with those who possessed technical knowledge of the parties' processes, and weighed those competing considerations. Dkt. 52 at 5-6. Judge Little properly concluded that, on balance, the restrictions proposed by John Zink were too restrictive and that this Court's standard protective order for highly confidential material—which includes limitations

---

[7] *See Koninklijke Philips N.V. v. Amerlux, LLC*, 167 F. Supp. 3d 270, 272 (D. Mass. 2016) (addressing dispute where the parties agreed to a protective order but disagreed whether in-house counsel, who provided unrebutted evidence that they were not engaged in competitive decision-making, could review protected materials); *Razor USA LLC v. DGL Grp., Ltd.*, No. CV 19-12939 (JMV), 2020 WL 3604081, at *1 (D.N.J. July 2, 2020) ("The parties agree that there should be a discovery confidentiality order entered in this patent case but disagree on one issue.").

[8] The Court did identify one case where a court entered a protective order without first finding that the information at issue was protected. *See Knight Cap. Partners Corp. v. Henkel Ag & Co., KGaA*, 290 F. Supp. 3d 681, 685 (E.D. Mich. 2017) (adopting two-tier protective order where the allegations involved trade secrets and "neither side has made any showing adequate for the Court to find that none of the information could be regarded as such"). The court in *Henkel* did not follow the procedure employed in the Tenth Circuit, and Judge Little did not err in refusing to follow the *Henkel* decision.

No. 25-cv-059

on disclosure and use—was adequate to protect the admittedly confidential information.

### III

Having reviewed the entirety of Judge Little's opinion, the parties' original briefs, their objections and responses, and the exhibits, this Court is not left with a definite or firm conviction that Judge Little made a mistake when she conducted the Rule 26 analysis. The restrictions requested by John Zink would substantially impair Zeeco's ability to prepare its defense by investigating, for example, whether the alleged trade secrets were known to or used by Zeeco prior to the alleged misappropriation or whether John Zink failed to protect the trade secrets allegedly at issue. The restrictions would also substantially increase the cost of litigation by requiring counsel to consult with experts—rather than employees already on the company payroll—when reviewing discovery. These significant costs should not be imposed without at least a preliminary showing that trade secrets are *actually* at issue, and not just *allegedly* at issue. Because John Zink has not made that showing here, the Court holds that Judge Little did not err in declining to adopt the heightened restrictions it requested. John Zink's objections are overruled.

DATED this 31st day of July 2025.

JOHN D. RUSSELL
*United States District Judge*